IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**MICHAEL VERNON SHANKLE**                                                                                        **APPELLANT**

v.                                                                                                   **CAUSE NO.: 1:12-CV-117-SA**

**DIANNE SHANKLE**                                                                                                  **APPELLEE**

## MEMORANDUM OPINION & ORDER

Appellant debtor Michael Vernon Shankle appeals the bankruptcy court's determination that his persistent refusal to divide certain investment accounts pursuant to an Arkansas divorce decree constituted a "willful and malicious injury" to his ex-wife, Dianne Shankle, and that a resulting Arkansas judgment for the balance due constituted a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(6). Finding no error, the bankruptcy court's decision is AFFIRMED.

### FACTS

Michael and Dianne Shankle divorced in 1999. Pursuant to a decree entered by the Chancery Court of Benton County, Arkansas on August 25, 1999, Michael was ordered to pay alimony and child support to Dianne, as well as to divide certain accounts which were marital property. Specifically, and pertinent to this appeal, paragraph eleven of the decree provided:

> The Court finds the following items of personal property are marital property, and shall be equally divided by the parties: Idex Mutual Fund with an approximate balance of $80,000.00; Baker-Hughes Stock in the approximate amount of $4,000.00; Invesco Mutual Fund with an approximate balance of $100,000.00.

Under this division, Michael and Dianne would each be entitled to approximately $92,000.00 in proceeds. However, instead of complying with the decree, Michael withdrew all the funds in the Invesco account, in the total sum of $114,222.83, and had these proceeds remitted to a John Hancock account in his name. This sum of money was later spent by Michael for his benefit. Michael testified that he considered this withdrawal to be his one-half of the proceeds from the three

accounts; however, he refused to tender the remaining two accounts (which were in his name) to Dianne. Dianne testified that Michael also refused to provide any paperwork or information related to the accounts.

On September 13, 2000, the Chancery Court of Benton County found Michael to be in contempt of court for his failure to divide the three accounts, as well as for his failure to pay other sums ordered by the court. At this point, the proceeds from the Invesco account had been spent; however, the Idex account was worth approximately $99,000.00. Michael nonetheless refused to tender to Dianne the money which she was entitled under the 1999 decree. On August 6, 2002, the Circuit Court of Benton County[1] found that Michael had failed to divide the three accounts as ordered by the divorce decree, as well as the 2000 order, and ordered Michael to, within ten days, pay Dianne her share of the accounts listed in the divorce decree, plus interest at the rate of 10% per annum from the entry of the divorce decree. The circuit court also found Michael to be in willful contempt of court because of his failure to comply with previous orders of the court, and ordered Michael to execute documentation necessary to transfer Michael's entire interest in the Idex account and the Baker-Hughes stock to Dianne.

However, Michael testified that due to steep market declines, the Idex account was at this point worth only $50,456.13.[2] Dianne received this sum on August 14, 2002—slightly less than

---

[1]Effective July 1, 2001, the Arkansas Constitution was amended to merge separate courts of law and equity into the Circuit Court.

[2] Michael also testified that he learned in April 2002 that the Idex account had been frozen. Michael claims that the freeze on the account prevented him from mitigating the market losses. The bankruptcy court found that "the evidence is at best inconclusive, [Michael] implied that [Dianne] caused this account to be frozen, but [Dianne] denied doing so. . . . Had [Michael] not defied the divorce decree, this would not even be an issue."

what she would have received from the Idex account had the 1999 divorce decree been complied with plus the 10% interest that had been accruing since the date of the 1999 decree. Dianne testified that until she received this money, she "never knew what was in that account . . . because Michael would not turn over any paperwork." Dianne also received the Baker Hughes stock, although the precise amount of this transfer is unknown.

By order dated July 24, 2006, the Circuit Court of Benton County found Michael liable to Dianne in the total sum of $149,934.40, and awarded a judgment in that amount against Michael and in favor of Dianne, with interest to accrue thereon beginning June 6, 2006, at the rate of 8% per annum. Of this amount, $97,435.91 was for "Marital Property awarded by Decree of Divorce to Plaintiff but never tendered by Defendant (with interest)." This sum represented Dianne's share of the Invesco and Idex accounts (plus interest) which she never received.

## PROCEDURAL HISTORY

Michael filed a request for relief under Chapter 7 of the United States Bankruptcy Code on October 3, 2005. In a schedule filed with the bankruptcy court, Michael listed a disputed debt of $141,000.00 owed to Dianne Shankle. Dianne filed an adversary proceeding in the bankruptcy case to determine the dischargeability of this amount, which consisted of unpaid alimony, maintenance, child support, and other obligations Michael was ordered to pay pursuant to the divorce decree and subsequent proceedings related to the divorce.

The trial of the adversary proceeding was held on March 9, 2012. At trial, the parties stipulated that the amounts owed for alimony, child support, and attorney's fees were non-dischargeable; therefore, the only issue remaining was whether a debt in the amount of $97,435.91 for marital property awarded to Dianne but never tendered by Michael was non-dischargeable.

3

Following the trial, the bankruptcy court issued a memorandum decision finding that "the defendant's [Michael] conduct amounts to a willful and malicious injury as contemplated by § 523(a)(6) of the Bankruptcy Code . . . the plaintiff's [Dianne] claim against the defendant for his failure to transfer to her one-half of the marital assets is a non-dischargeable debt in the defendant's bankruptcy case." Michael timely filed an appeal to this Court.

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed under the "clearly erroneous" standard; conclusions of law are reviewed *de novo*. In re Evert, 342 F.3d 358, 363 (5th Cir. 2003). A finding of fact is clearly erroneous only if "on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." In re Duncan, 562 F.3d 688, 694 (5th Cir. 2009).

## DISCUSSION

The sole issue in this appeal is whether the bankruptcy court erred in determining that Michael's obligation resulting from paragraph eleven of the divorce decree and subsequent state court judgment is a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(6).[3] The Bankruptcy Code provides:

> **11 U.S.C. § 523. Exceptions to discharge**
> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

An injury is "willful and malicious" where there is either (1) an objective substantial certainty of

---

[3] Michael filed his bankruptcy case approximately two weeks prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and the versions of the Code sections set forth above apply to this action.

harm, or (2) a subjective motive to cause harm. In re Miller, 156 F.3d 598 (5th Cir. 1998). However, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Kawaauhau v. Geiger, 523 U.S. 57, 64 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998).

> Following the trial below, the bankruptcy court determined:

> In the proceeding before this court, there is no question but that the defendant willfully refused to divide the three marital accounts with the plaintiff. The defendant is a well educated individual and obviously knew that his failure to comply with the chancery court divorce decree and the other state court orders would cause the plaintiff economic injury. As such, the defendant's conduct amounts to a willful and malicious injury as contemplated by § 523(a)(6) of the Bankruptcy Code. The level and nature of the defendant's actions meet the standard articulated by the Fifth Circuit Court of Appeals in [In re Miller].

Michael first argues that the bankruptcy court erred by "fault[ing] Michael for exercising his right to appeal the judgment of the divorce court." Michael bases this argument on a statement made during trial wherein Judge Houston remarked: "Now, but that doesn't excuse not doing what you should have done back in 1999." However, there is no evidence in the record that Michael's appeal concerned paragraph 11 of the divorce decree, or that Michael's responsibility to comply with the divorce decree was stayed during the pendency of his appeal. This assignment of error is without merit.

Michael next makes several arguments based on oral remarks made by the bankruptcy judge during the trial that he contends are "[c]ontrary to its written opinions in this case." The Court finds these arguments to be without merit. First, the remarks of the bankruptcy judge, which were in the nature of "off the cuff" observations made during the trial, do not contradict his written findings. Further, even if there were a contradiction, "[a] court's findings of fact and conclusion of law prevail over oral pronouncements from the bench . . . . In the face of an inconsistency, express written

5

findings . . . supersede oral ones [and] informal oral remarks made from the bench." 89 C.J.S TRIAL § 1285 (2013).

Michael next argues that the bankruptcy court overlooked the fact that he "left" or "reserved" the Idex account for Dianne. For example, Michael argues that "the bankruptcy court acknowledged that Michael believed the Idex account, worth over $90,000.00 at the time, plus half of the Baker-Hughes stock, would satisfy the $92,000.00 awarded to Dianne in the divorce decree." It is true these accounts probably would have satisfied Michael's obligation under the divorce decree had Michael actually acted to give the money to Dianne. However, as the bankruptcy court found, "[u]ntil the Circuit Court of Benton County entered its order, dated August 6, 2002, [Michael] took no action whatsoever to transfer any part of the Idex account or the Baker-Hughes account to [Dianne]" and "[Michael] obviously knew that his failure to comply with the chancery court divorce decree and the other state court orders would cause the plaintiff economic injury."

The bankruptcy court committed no error in determining that Michael's conversion of the Invesco account and his refusal over a nearly three year period (despite being twice held in contempt) to provide Dianne the sums she was owed under the 1999 decree were substantially certain to cause Dianne economic injury, and that such conduct amounted to a willful and malicious injury as contemplated by § 523(a)(6) of the Bankruptcy Code.

## CONCLUSION

Appellant has failed to demonstrate that the bankruptcy court erred in determining that his actions constituted a willful and malicious economic injury to Dianne Shankle. The judgment of the bankruptcy court is therefore AFFIRMED.

SO ORDERED on this, the 13th day of March, 2013.

          **/s/ Sharion Aycock**
          **UNITED STATES DISTRICT JUDGE**